UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-30079

| | | |
|---|---|---|
| LINDA E. HERBERT, | ) | |
| Plaintiff | ) | |
| | ) | |
| Vs. | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| THE HARTFORD FINANCIAL | ) | |
| SERVICES GROUP, INC., | ) | |
| Defendant | ) | |

Defendant has moved to dismiss this action under Fed. R. Civ. P. 12(b)(2) on grounds that

there is a lack of personal jurisdiction. Plaintiff opposes this motion as defendant concedes it does

business in Massachusetts, the plaintiff did work for the defendant in Massachusetts and part of the

transaction at issue occurred in Massachusetts. There are no statutory or case law grounds for

excluding The Hartford from the jurisdiction of this court.

**FACTS**

Plaintiff, Linda Herbert, was employed by the defendant, The Hartford, from 1997 to

2001 (Complaint). After complaining of unequal pay on the basis of sex, she suffered retaliation

by the defendant culminating in termination when she was accused of "stealing equipment

provided by a supplier" (Complaint). In fact, plaintiff had arranged for the donation of almost all

the equipment to the United States Naval Reserves, while keeping some for herself and co-

1

workers to use at home (Exh. A). The equipment was not useful to the defendant and she had permission for the donation (Complaint).

At all relevant times the plaintiff lived in Massachusetts. She did commute to the defendant's office in Hartford to work, however, she also worked at home (Exh. A). This fact is itself critical to her termination. The equipment she had sent to her home to work with, is part of what the company refers to as "stolen."

Just after her termination, agents of the defendant came to Massachusetts to retrieve the equipment and engaged in a confrontation with a friend of the plaintiff (Exh. B).


## ARGUMENT

### I.    Defendant Is Subject To Personal Jurisdiction in Massachusetts

Defendant concedes in its motion that The Hartford, a well known major insurance and financial services company, does business in Massachusetts. They are, in fact, registered to do business in Massachusetts. Throughout all the relevant time period in this case, the plaintiff has resided in Massachusetts. There is no realistic question as to the defendant's contacts with the State of Massachusetts or the fairness of their being asked to defend an action with a former employee residing in Massachusetts, just a few miles from their corporate headquarters.

Defendant attempts to claim that this action cannot come within the jurisdictional parameters of Massachusetts law citing *G.L. c. 223A §3*. That statute provides as follows:

> A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a)    transacting any business in this commonwealth;
> (b)    contracting to supply services or things in this commonwealth;

(c)     causing tortious injury an an act or omission in this commonwealth;
(d)     causing tortious injury in this commonwealth by an act or omission
        outside this commonwealth if he regularly does or solicits business,
        or engages in any other persistent course of conduct, or derives
        substantial revenue from goods used or consumed or services rendered,
        in this commonwealth.

This action probably meets all of the criteria in subsection (a) through (d) but certainly

comes within subsections (c) and (d).

Subsection (a) is satisfied because the defendant hired the plaintiff, a Massachusetts

resident, while living in Massachusetts and permitted her to perform some of her work at home

in Massachusetts on their behalf. The plaintiff's use of equipment at home was part of the reason

given for her termination. Consequently, the cause of action does indeed arise out of The

Hartford transacting business within the Commonwealth. It could not have happened without the

defendant hiring a Massachusetts resident, nor without her using equipment at home in

Massachusetts. Subsection (b) equally applied since the plaintiff was a purchaser working partly

at home in Massachusetts on behalf of The Hartford.

Under either (c) or (d), the defendants are subject to jurisdiction if they caused tortious

injury in the Commonwealth. Plaintiff was injured by her termination while residing in

Massachusetts. While the termination itself may have occurred in Connecticut, the company

actions could hardly be said to be confined to Connecticut when, at the time it occurred, the

plaintiff was commuting from Massachusetts and sometimes performing work for the company

while in Massachusetts.

Defendants attempt to compare this action to cases where torts occurred completely in

other jurisdictions, but the plaintiffs later returned to Massachusetts where they continued to

3

suffer the effect of some injury which had occurred elsewhere. *Crocker* v. *Hilton Int'l Barbados, Ltd.*, 976 F. 2d 797, 799 (1ˢᵗ Cir. 1992); *Fournier* v. *Best Western Treasure Island Resort*, 962 F. 2d 126, 127 (1ˢᵗ Cir. 1992); *Marino* v. *Hyatt Corp.*, 793 F. 2d 427, 430 (1ˢᵗ Cir. 1986).

These situations are not comparable to employment cases. In those cases someone from Massachusetts visited another state temporarily and was injured there. Here, the plaintiff had a continuing, ongoing relationship with The Hartford not only in Connecticut but from her home in Massachusetts. In an employment case the damage suffered occurs in more than just a geographic place. Plaintiff suffers economic loss, primarily wages and benefits. That "injury" cannot be said to be confined to Connecticut when the plaintiff is living and commuting from Massachusetts. Secondly, the defendant in this case subsequently came to Massachusetts and (as a part of her termination) took the items at issue and engaged in a confrontation at the plaintiff's home (Exh. B). At a minimum, this is a partial cause of emotional distress injury which occurred in Massachusetts. Indeed, this whole dispute centered around equipment the defendant claims to "own" which the plaintiff brought to Massachusetts.

Defendant cites only one employment-related case to bolster its argument. *Cunningham* v. *Ardrox, Inc.*, 40 Mass App. Ct. 279 (1980). Defendant fails to note in citing this case that the plaintiff/employee in that action was employed by an Illinois company and was *living* in Illinois at the time all of the events occurred. *Cunningham* at 281. The plaintiff there only had an intention to later live in Massachusetts where he claimed he would *later* suffer economic harm. *Cunningham* at 281. In contrast, the plaintiff here immediately suffered economic harm by her termination while living in Massachusetts at the time the event occurred. She was not living in Connecticut, and she wasn't "visiting" there. She was commuting from Massachusetts for work

4

- an arrangement which benefited The Hartford. The Hartford cannot hire Massachusetts

commuters and then claim no relationship to employees living in that state. Defendant cites no

case which suggests otherwise.

In any event, the line of federal cases relied on by the defendant no longer appear to be

good law in this District. Defendants cite *Crocker, Fournier* and *Marino*, supra. In *Nowak* v.

*Tak How Investment, Ltd.*, 899 F. Supp. 25 (D Mass. 1995), Judge Young noted that these cases

are now doubtful in light of a subsequent Massachusetts Supreme Judicial Court case:

> In January of 1994, this landscape was blurred, if not erased, by the decision of
> the Supreme Judicial Court of Massachusetts in *Tatro* v. *Manor Care, Inc.*, 416
> Mass. 763, 625 N.E. 2d 549 (1994). In *Tatro*, the plaintiff, a Massachusetts
> resident attending a conference in Anaheim, California, slipped and fell in the
> bathtub at her hotel. After holding that the hotel transacted business in
> Massachusetts based on its broad range of solicitations and other activities within
> the state, *id*. at 767-69, 615 N.E. 2d 549, the court went on to discuss whether
> Tatro's injury "arose from" those activities. Tatro argued that but for the hotel's
> solicitation and subsequent contact with her, the injuries would not have occurred.
> The court rejected the strict interpretation of *Marino* in favor of the liberal "but
> for" approach of *Prejean, Lanier* and *Shute*. Jurisdiction was proper, so the
> Supreme Judicial Court said, because the reserving of a room in an out-of-state
> hotel "is considered the first step in a train of events that results in the personal
> injury." *Id*. at 770, 625 N.E. 2d 549. The Massachusetts court relied on the
> rationales employed by the Fifth and Sixth Circuits: Logically, there is no reason
> why a tort cannot grow out of a contractual contact. In a case like this, the
> contractual contact is a "but for" causative factor for the tort since it brought the
> parties within tortious "striking distance" of each other. *Id*. at 771, 625 N.E. 2d
> 549 (quoting *Prejean*, 652 F.2d at 1270 n. 21). [Under the Michigan long-arm
> statute,] a claim arises from a defendant's transaction of business in the forum
> State if the claim was made possible by, or lies in the wake of, the transaction of
> business in the forum State. *Id*. at 771, 625 N.E. 2d 549 (quoting *Lanier*, 843 F.
> 2d at 909); see also *Shute*, 897 F. 2d at 383-86 (employing "but for" test and
> concluding tort claim may arise from contract). The Supreme Judicial Court
> concluded: [This] approach is more consistent with the language of our statute and
> with decisions of this court interpreting it. There is no readily apparent basis in
> the statutory language ("arising from") for the restrictive proximate cause
> approach adopted by the First Circuit....But for the defendant's solicitation of
> business in Massachusetts, and its agreement to provide the plaintiff with hotel

accommodations in Anaheim, California, the plaintiff would not have been injured in a room of the hotel. We conclude that the requirements of [the long-arm statute] have been satisfied.

*Nowak* v. *Tak How Investment,* at 29, 30.

In the *Nowak* case, a foreign hotel's solicitation in Massachusetts was deemed sufficient to establish jurisdiction. *Nowak* at 28-32. Furthermore, in this case jurisdiction can be established by the defendants hiring of a Massachusetts resident since that action set in motion the chain of events which created the cause of action.

For these reasons, the motion should be denied.

THE PLAINTIFF
BY HER ATTORNEY

Date:   May 24, 2004

Maurice M. Cahillane, Esq.
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121
BBO# 069660

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served this 24TH day of May, 2004 on all parties, by First Class Mail, postage prepaid, to: Thomas Royall Smith and Erick J. Winton, Attorneys for the Defendant, Jackson Lewis, LLP, 75 Park Plaza, Boston, MA 02116.

Maurice M. Cahillane

10373-010500\70056.wpd

6

# EXHIBIT A



# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
### CAPITOL REGION OFFICE
**1229 ALBANY AVENUE    HARTFORD, CONNECTICUT 06112**
**TEL. (203) 566-7710**

## AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE    IN REPLY:

DATE: 7-26-01    CASE NO.: 02/0041

My name is ___Linda E. Herbert___

and I reside at ___11 Ruth Avenue, Chicopee, MA 01013___

the respondent is ___The Hartford___

whose business address is ___690 Asylum Street, Hartford, CT___

I was

(x) terminated
( ) suspended
( ) placed on probation
( ) demoted
( ) warned
( ) given a poor evaluation
( ) denied a raise
( ) less trained
( ) denied an office
( ) discriminated against in terms and conditions of employment
on _____ and believe that my

( ) not hired/not promoted/not rented a dwelling
( ) harassed    ( ) sexually harassed
( ) earning a different rate of pay
( ) constructively discharged
( ) retaliated
( ) not hired due to a BFOQ
( ) not hired due to a disability
( ) delegated difficult assignments
( ) denied service(s)

RECEIVED
JUL 26 2001
COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES
CAPITOL REGION

( ) race [              ]
( ) color [             ]
(x) sex [ ]male [ ]female
( ) ancestry
( ) age [    ]DOB    /    /
( ) religion [          ]
( ) pregnancy

( ) national origin [
( ) marital status
( ) physical disability
( ) mental retardation
( ) religious creed
( ) familial status
( ) learning disability

]

( ) mental disorder
( ) alienage
(x) previously opposed, filed, or assisted
( ) creed
( ) sexual orientation

]

was in part a factor in this action. I believe that the respondent violated the following Connecticut General Statutes Sections [statute] enforced through Section 46a-58(a) and [act(s) listed below]

( )46a-58 ( )( )
(x)46a-60 (a)(1)
(x)46a-60 (a)(4)
( )46a-60 (a)(7)( )( )( )( )
( )46a-60 (a)(8)( )( )( )( )
( )46a-64 ( )( )
( )46a-64a ( )( )
( )46a-80

( ) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e and the Civil Rights Act of 1991
[cite for over 15 individuals employed]
( ) Age Discrimination in Employment Act, 29 U.S.C. 621-634
[cite for over 20 individuals employed]
( ) Americans With Disabilities Act, 42 U.S.C. 12101 et seq.
(x) Equal Pay Act of 1964, 29 U.S.C. 206
( ) Section 504 of the Rehabilitation Act of 1973, as amended

other_____

**I provide the following particulars:**

1. I was employed by the Respondent, The Hartford, from February 1997 to June 11, 2001.

2. During my employment, I worked in Purchasing with titles of Associate Buyer, Buyer (Technician), Procurement Manager I, and Strategic Analyst/Trader. I performed my job properly and received good evaluations.

3. In approximately August of 2000, I discovered that two men, who were performing the same job as I was, were paid substantially more. I complained to my supervisor about this situation. Although I did receive a raise ( to almost, but not the same as the males), I was then subjected to retaliation up to my termination on June 11, 2001. I was ostracized and many people did not speak to me. I was improperly reprimanded for the manner in which an account was handled. When I complained, I was told to look for another job.

4. In June of this year, I was terminated for an alleged violation of company policy," and never was informed as to what exact policy I violated.

5. As a result of purchases of consumable supplies from a vendor of The Hartford, through a promotional points program, I was able to select pieces of equipment from the program, most of which I donated on behalf of the company to the U.S. Naval Reserves, some of which I used at home for work purposes, some of which I gave to co-workers to use at home for work purposes and some of which I gave to my daughters. I had no reason to believe this was improper as I had prior oral approval of a supervisor to donate such equipment. Nevertheless, I was interrogated by the Respondent's Department of Special Investigations and forced (on threat of termination) to sign a statement that what I did was not "right". I was terminated anyway. Others who had received benefits or goods from similar programs and vendors before had not been terminated.

6. My treatment and termination were done because of my sex and in retaliation for my complaint about my relative pay.

Doc. # 45951

COMPLAINT AFFIDAVIT
CASE NO. _____
PAGE TWO


I request the Connecticut Commission on Human Rights and
Opportunities investigate my complaint, secure for me my rights as
guaranteed to me under the above cited laws and secure for me any
remedy to which I may be entitled.


_Linda E. Herbert,_____ being duly sworn, on oath, states
that _____she_____ is the Complainant herein; that ____she_____ has
read the foregoing complaint and knows the contents thereof; that the
same is true of ___her____ own knowledge, except as to the matter
herein stated on information and belief and that as to these
matters ___she___ believes the same to be true.

Dated at _____, Connecticut this __23rd__ day
of __July_____, __2001__ .

                                    _Linda C. Herbert_____
                                       Complainant's Signature
                                    Linda E. Herbert
Subscribed and sworn to before me this _23rd_ day of _July_____,
_2001__ .



        _Virginia Robak, notary public_
        Notary Public/Commissioner of Superior Court
        my commission expires Feb. 2, 2007

/p

RECEIVED
JUL 2 6 2001
COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES
CAPITOL REGION

EXHIBIT B

06/18/2001  03:14:53 PM

## The Hartford
### Department of Special Investigations
### Action Taken
### Case #: I2001401

**Action Description:**  Pick up Hartford equipment from the residence of Linda Herbert.

**Date(s) of Action:**    06/13/01

**Action Details:**

On 06/13/01 at approximately 10:00 AM this writer spoke with Linda Herbert via telephone. Ms. Herbert stated she had several items belonging to The Hartford, specifically three printers and two digital camera's, at her home, 11 Ruth Avenue in Chicopee, Ma. Ms. Herbert indicated that all of the equipment was boxed and that she initially intended to return all of it via UPS to The Hartford. It was subsequently agreed that Hartford investigators would meet with her at the above residence between the time of 12:00 and 12:30 PM on this date. It was further agreed that Ms. Herbert would be given a copy of her sworn statement of 06/11/01 and a copy of the HP PurchasEdge printout she initialed and dated on 06/11/01.

At approximately 1100 hours Investigators Wardell and Sealander left The Hartford and drove first to 59 Anniversity Street in Springfield, Ma. for the purpose of obtaining photographs of that location. According to the printout from the HP PurchasEdge program, nine shipments of various HP equipment ordered by Ms. Herbert had been delivered to 59 Anniversity Street.

After obtaining the above described photographs Hartford investigators drove to 11 Ruth Avenue in Chicopee, Ma., arriving at approximately 12:15 PM. Upon arriving at this location investigators first noticied boxes stacked on the paved driveway alongside the house, approximately 20 to 25 feet in from the public road. Investigators pulled into the driveway and parked alongside the boxes which were clearly marked with the name Hewlett Packard. As investigators stepped from the car a green truck with a wood platform body appeared in the driveway blocking our exit to the public road.

A white male stepped from the truck and approached investigators. The man stated "I want three things from you". This investigator asked the man who he was. This man stepped closer to investigators and in a threatening tone of voice stated "who are you motherfuckers". I informed this person that we were from The Hartford, and had an appointment with Linda Herbert if this was 11 Ruth Avenue in Chicopee, Ma. I then asked the individual to move his truck so that we could leave the premises as it was becoming apparent this individual was trying to provoke a physical confrontation. Investigators were then told that he wanted "a copy of the statement, a copy of the list and a copy of the code of conduct". The individual was asked several times by Hartford investigators to move the truck and allow us to exit. Each request was met with a refusal. At this point this writer utilized a cell phone and contacted DSI at The Hartford and informed them of the situation. During this time Ms. Herbert and another female holding a young child appeared. I walked to Ms. Herbert and handed her a copy of her sworn statement and the attached HP PurchasEdge list as she and I had agreed earlier. I asked her who the man was that refused to allow us to leave the property and she responded that he was her "common

06/18/2001  03:14:53 PM

law husband". At this moment the male rushed to where this investigator was talking to Ms. Herbert and made body contact, pushing against this writer and stating in a very threatening voice "come on motherfucker". I told him that I was not going to fight with him and at that moment I again telephoned DSI. While on the telephone with DSI, who were in turn making contact with the Chicopee Police and requesting assistance at our location, the individual turned away from this writer and went to the back of his truck. He reached with both hands and started pulling out what appeared to be two pieces of perforated steel, approximately six feet in length. I relayed this information to DSI whom I was still on the telephone with. That information was relayed to the Chicopee Police.

Investigators made every attempt to deal only with Ms. Herbert and load the Hewett Packard equipment she was giving back to The Hartford. There was no way to exit the property because of vehicles parked in front of, and the truck parked behind us.

Just momnents before Police Office Glenn Blanchard, Badge # 49,  ID # 169, of the Chicopee Police arrived,  the male individual moved his truck from the driveway and parked it on the road in front.

Upon the arrival of Officer Blanchard Hartford investigators described the words and actions of the indiviidual indentified only as the "common law husband" of Ms. Herbert. Officer Blanchard stated that because there was no action actually taken by the individual to physically assault Hartford investigators, there was nothing he could do except ensure that the peace is maintained. Officer Blanchard indicated that the name of the individual was "Bill Davis". The second female who accompanied Ms. Herbert was her daughter, Dawn. The police incident number for this case is 17560.

The items received from Ms. Herbert from her residence consisted of the following; one HP 970 printer, one HP 3100 printer and one HP g85xi printer. In addition to the three printers there were two 618 digital camera's. Ms. Herber also returned a motorola pager.

On June 14, 2001, arraangements were made with a Mr. Walker at Westover Air Force Base for Hartford investigators to pick up the items presently stored there that Ms. Herbert said were given to "Team Yankee". These items will be picked up at 9:00 am on the morning of 06/15/01 by Hartford investigators.